## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BELINDA L. GROSSKOPF,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **JOHN E. POTTER, Postmaster General;** | § | **SA-05-CA-0836 FB (NN)** |
| **and SAN ANTONIO ALAMO AREA** | § | |
| **LOCAL, AMERICAN POSTAL** | § | |
| **WORKERS' UNION, AFL-CIO,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND RECOMMENDATION
## ON DEFENDANTS' MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

This memorandum and recommendation addresses the motion to dismiss and the motions for summary judgment filed in this case.[1]  I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and the district court's order referring all pretrial matters to me for disposition by order or to aid the district court by recommendation where my authority as a magistrate judge is statutorily constrained.[2]  After considering the motions, I recommend granting the motions to the extent reflected in my recommendations.

### Jurisdiction

The district court has jurisdiction in this case under 28 U.S.C. § 1331 because the case includes claims brought under the laws of the United States—specifically, 42 U.S.C. § 2000e-2,

---

[1]Docket entry #s 59 & 60.

[2]Docket entry # 61.

the Rehabilitation Act[3] and the Americans with Disabilities Act (ADA) and under 28 U.S.C. §

1346 because the case involves claims against the United States government.

### Grosskopf's Claims

Plaintiff Belinda Grosskopf has sued the United States Postmaster General and her union,

the San Antonio Alamo Area Local, American Postal Workers Union, AFL-CIO[4] (the Union), for

employment discrimination.  Grosskopf—an employee of the United States Postal

Service—complains that she was discriminated against when her scheduled-days-off were

changed on November 22, 2003 and in December 2003.  Grosskopf alleges that she was

discriminated against on the basis of her race (Caucasian), her gender (female), and physical

disability.  She also complains that the Union failed to represent her in her grievance about the

change in scheduled-days-off in the same manner as it represented males whose off days were

changed.  The government has moved to dismiss Grosskopf's claims against the Postmaster

General and moved for summary judgment in the alternative.  The Union has moved for

summary judgment on the claims against the Union.

### The Government's Motions

The government first moves to dismiss Grosskopf's Title VII claim about a change in

scheduled workdays in December 2003.  The government maintains that the claim should be

dismissed because Grosskopf failed to exhaust her administrative remedies as to this claim.

---

[3]Although Grosskopf's complaint specifies the American with Disabilities Act as the legal basis for her claims about employment discrimination based on disability, the appropriate legal basis for Grosskopf's claims against the Postmaster General is the Rehabilitation Act.

[4]*See* docket entry # 57 (granting Grosskopf leave to amend her complaint to correct the name of the defendant union).

Because the government presented documentary evidence to support its argument and because I considered that evidence, I conducted my analysis of this argument under Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[5]  "A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrates the absence of a genuine issue of material fact."[6]  If the movant meets this burden, the burden shifts to the non-movant to show that a fact question exists that precludes summary judgment.[7]

Before filing a Title VII action in federal court, a government employee must exhaust her administrative remedies.[8]  If a government employee fails to exhaust her administrative remedies, the district court lacks jurisdiction over the employee's claims.[9]  To show that Grosskopf failed to exhaust her administrative remedies as to her claim about a December 2003 change in scheduled-days-off, the government presented a copy of the Equal Employment Opportunity Commission's (EEOC) file of Grosskopf's administrative claim about the Postal Service.  The file includes a Decision on the Record in which the Administrative law Judge (ALJ) described

---

[5]FED. R. CIV. P. 56.

[6]*FDIC v. McCrary*, 977 F.2d 192, 194 (5th Cir. 1992).

[7]*See McCrary*, 977 F.2d at 194.

[8]*See* 42 U.S.C. 20002-16(c); *Tolbert v. United States*, 916 F.2d 245, 247-8 (5th Cir. 1990).

[9]*See Tolbert*, 916 F.2d at 247-8.

the issue as "whether or not the Complainant was discriminated against, based on race (white), sex (female) and physical disability (left rotator cuff tear nerve/impingement), when her days off were changed"[10]  The ALJ's opinion refers to only one instance in which Grosskopf's days off were changed—a change on November 15, 2003.  The November 15, 2003 date is consistent with the November 22, 2003 date complained about in Grosskopf's complaint because Grosskopf maintains that "[t]he notification was made effective November 15, 2003 and began on November 22, 2003.[11]  The government also presented a copy of the agency investigative summary.[12]  The summary refers to only one instance in which Grosskopf was notified that her scheduled-days-off were being changed—notification that Grosskopf's scheduled-days-off would be changed effective November 15, 2003.  The file also includes a letter dated October 31, 2003, that reads, "[e]ffective November 15, 2003, your scheduled days off will change from Saturdays and Sundays to Thursdays and Fridays."[13]  The government's evidence indicates the Grosskopf did not complain about a December 2003 change in scheduled-days-off in her administrative complaint, thus failing to exhaust her administrative remedies about that complaint.  The burden now shifts to Grosskopf to demonstrate that she exhausted her administrative remedies about the complaint.

        In response, Grosskopf relies on the lack of specificity in the "ALJ's definition of the

---

[10]Docket entry # 59, exh. E, p. 2 of the opinion.

[11]*See* docket entry # 59, exh. B, pp. 3 & 4 of Grosskopf's affidavit.

[12]Docket entry # 59, exh. B.

[13]Docket entry # 59, exh. C., p. 5.

issue and her ignoring the time line."[14]  Grosskopf characterizes the government's argument as "misplaced and not supported by the specific expressed language of the EEOC [ALJ's] 'Order Entering Judgment'. . . ."[15]  Grosskopf's suggests that because the ALJ failed to specify that she considered Grosskopf's complaint that she was discriminated against on November 15, 2003, the ALJ actually considered complaints that Grosskopf was discriminated against in November 2003 and December 2003.  The suggestion ignores the substance of the ALJ's decision, as well as Grosskopf's own affidavit.  The ALJ's discussion specifically refers to November 15, 2003 and Grosskopf's affidavit identifies the same date.  Grosskopf's argument also ignores the date identified in the EEOC's Notice of Final Action attached to her complaint.  The notice specifically refers to a change in days off on November 22, 2003.[16]  Grosskopf failed to demonstrate that she exhausted her administrative remedies for her complaint about a change in scheduled-days-off in December 2003.  Because the exhaustion of administrative remedies is a jurisdictional prerequisite to bringing a lawsuit, that claim should be dismissed for lack of jurisdiction.

The government next moves for summary judgment on Grosskopf's claims that she was discriminated against on the basis of gender and race when her scheduled-days-off were changed on November 22, 2003.  The government maintains that Grosskopf cannot make a prima facie case of discrimination as to either gender or race because a change in scheduled-days-off is not an adverse employment action and because Grosskopf cannot show that similarly situated

---

[14]Docket entry # 71, p. 11.

[15]*Id.*

[16]*See* docket entry # 1, exh. 2.

individuals outside of her class were treated more favorably.[17]

Title VII of the Civil Rights Act of 1964—42 U.S.C. § 2000e-2—makes it unlawful "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, [or] sex. . . ."[18]  Where, as here, there is no evidence of direct discrimination, a plaintiff must first present a prima facie case of discrimination.[19]  To make a prima case of disparate treatment, the plaintiff must demonstrate that (1) she was a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated.[20]  The government maintains that a change in scheduled-days-off does not constitute an adverse employment action, apparently because the change did not affect Grosskopf's pay, benefits or level of responsibility.[21]

Although Grosskopf did not initially respond to the government's argument,[22] she

_____

[17]Docket entry # 59, pp. 9-12.

[18]42 U.S.C. § 2000e-2(a)(1).

[19]*See Turner v. Baylor Richardson Med. Ctr*, 476 F.3d 337, 345 (5th Cir. 2007).

[20]*See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999) (stating the plaintiff's requirements for a prima facie case in a disparate treatment case).

[21]Although the government argued that Grosskopf failed to show she suffered an adverse employment action, it did not specifically explain why.  Instead, the government cited to case law explaining that employment actions are adverse only where pay, benefits or level of responsibility are affected.  *See* docket entry # 59, p. 11.  The only logical reason to cite this authority is to argue that a change in scheduled-days-off does not constitute an adverse employment action because the employee's pay, benefits or level of responsibility are not affected.

[22]*See* docket entry # 71.

addressed the argument in a sur-reply.[23]  In her sur-reply, Grosskopf asserted that she suffered an adverse employment action because she was removed from her modified limited duty job and made a general employee who does not have a disability caused by an on-the-job injury.  She complained in the sur-reply that she was summarily demoted to mail handler, pay level 5, due to the fact that she is a white female with a disability caused by an on-the-job injury.[24]  To the extent that such a demotion occurred, it is irrelevant to the government's argument that a change in scheduled-days-off is not an adverse employment action for the purpose of Grosskopf's employment discrimination claim based on gender and race.  A demotion based on an on-the-job injury and disability status might be relevant to a disability discrimination claim under the Rehabilitation Act, but not under Title VII because that statute does not prohibit employment discrimination based on disability.  Even if Title VII covered disability, Grosskopf did not complain about being demoted in her complaint or in her charge of discrimination with the EEOC.[25]  Instead she complained about the change in her scheduled-days-off and alleged that her off days were changed because she is female and Caucasian.

As for the merits of the argument about adverse employment action, the government is correct.  "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."[26]  "Ultimate employment decisions include hiring, discharging, promoting,

---

[23]Docket entry # 88.

[24]*See* docket entry # 88, p. 3.

[25]*See* docket entry # 1, exhs. 1 & 2.

[26]*Dollis v. Rubin*, 77 F.3d 777, 781-2 (5th Cir. 1995).

compensating, or granting leave, but not 'events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—anything which might jeopardize employment in the future.'"[27]  Because "employment actions are not adverse where pay, benefits, and level of responsibility remain the same,"[28] a change in schedule does not constitute an adverse employment action where the employee's pay, benefits, and level of responsibility remain the same.[29]

The crux of Grosskopf's complaint seems to be that when the change of her scheduled-days-off took effect on November 22, 2003, the schedule change required her to work six consecutive days, causing her to take a sick day to avoid working five days in a row.  She asserts that her medical restrictions prevented her from working more than five days in a row.  Because Grosskopf's off days were changed from Saturdays and Sundays to Fridays and Saturdays, working six days in a row could have only happened once.  This single occasion forms the basis for Grosskopf's claim of discrimination based on gender and race under Title VII.  Grosskopf has not shown that her pay, benefits or level of responsibility were changed because of the change in her scheduled-days-off.  Consequently, the change in Grosskopf's scheduled-days-off does not constitute an adverse employment action.  For this reason, Grosskopf cannot make a prima facie case of disparate treatment under Title VII.  The government is entitled to summary judgment.

Another reason Grosskopf cannot make a prima facie case of disparate treatment is that

---

[27]*Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997).

[28]*Watts v. Kroger Co.*, 170 F.3d 505, 512 (5th Cir. 1999).

[29]*See Watts*, 170 F.3d at 512 (explaining that the change in the plaintiff's schedule did not constitute an adverse employment action).

she cannot show that similarly situated individuals were treated more favorably.  The government maintains that all similarly situated individuals—unassigned[30] regulars who had weekend days off—received letters notifying them that their days off would be changed.[31]  To show that other unassigned regulars were not treated more favorably, the government presented summary-judgment evidence establishing the following.  Grosskopf began working for the Postal Service on November 23, 1996.[32]  She became an "unassigned regular" employee on October 7, 2003.[33]  In November 2003, all unassigned regulars with scheduled-days-off on the weekend were notified that their scheduled-days-off were being changed.[34]  This action was taken to increase the number of unassigned regulars available to work on the weekends.[35]  Most of the unassigned regulars who received the notification were male—9 of 11 were male; most were Caucasian—9 of 11.[36]  These numbers show that all similarly situated employees who had scheduled-days-off on the weekend received notification that their off days were being changed.  Although all

---

[30]The terms "unassigned regular," "unencumbered regular," and "unencumbered unassigned regular" appear in several places in this memorandum.  According to Alex Aleman, Union President, the terms "unassigned" and "unencumbered" are different words that have the same meaning.  *See* docket entry # 71, exh. P-23, p. 27.

[31]Docket entry # 59, p. 11.

[32]*See* docket entry # 59, exh. A (notification of personnel action, item # 16, reflecting on-duty date of 11-23-1996).

[33]Docket entry # 59, exh. C, p. 4 (letter notifying Grosskopf that her job was being re-posted and she that she would become an unencumbered regular as of October 7, 2003 unless she was awarded a job).

[34]Docket entry # 59, exh. B, pp. 2-3 of Michael DeVilbiss's affidavit.

[35]*See id.*

[36]To confirm these numbers on de novo review, the district court must compare exhibits 3, 6 and 7 to Exhibit D to docket entry # 59.

similarly situated employees received notice that they would no longer be off on the weekend,

some of those employees pursued a grievance procedure through the Union.  Ultimately, the

effective date of the change in days off was delayed for four male employees,[37] but this result is

irrelevant to Grosskopf's claims because she does not complain about the effective date of the

change in her scheduled-days-off.  Instead, she complains that her scheduled-days-off were

changed because of her gender and her race.  To the extent that the Union treated her less

favorably, that claim is not attributable to the Postal Service.  The government's evidence shows

that all similarly situated individuals were not treated more favorably.

The only summary-judgment evidence Grosskopf presented to show that similarly

situated individuals were treated more favorably is her affidavit.[38]  In the affidavit, Grosskopf

complained as follows:

> I was the only employee, male or female of all races represented, who suffered a
> disability due to an OJI [on-the-job injury], who was on a statutorily protected
> MLDJ [modified limited duty job] and whose SDO [scheduled-days-off] were
> changed.  All other comparatives are not valid due to the fact that they did not
> suffer an OJI and placed in a statutorily protected MLDJ. . . . The only other
> comparative to me is Ms. Peggy Oldren, an African-American female over the age
> of forty (40) years, who also suffered an OJI and was in a MLDJ, with SDO of
> Sundays and Mondays, working in PL 314 and her SDO were not changed.[39]

This argument fails to at least two reasons.  First, Grosskopf's arguments conflates the protection

provided under Title VII with the protection provided under the Rehabilitation Act.  Title VII

---

[37]*See* docket entry # 59, exh. 8 to exh. D (four documents stating that employee grievances about change in off days were resolved by mutual agreement and that actual schedule change should have begun the following workweek).

[38]Docket entry # 71, exh. P-5.

[39]*Id.*

protects Grosskopf from employment discrimination based on gender; the Rehabilitation Act protects Grosskopf from discrimination based on a disability.  No single statute protects a person from a combination of discrimination based on a gender, race and disability—that is, no statute protects a person of a particular gender and of a particular race who has a disability from employment discrimination based on a combination of gender, race, and disability.  The second reason Grosskopf's argument fails is because the summary-judgment evidence presented about Peggy Oldren indicates that Oldren's scheduled-days-off were changed from Sunday and Mondays to Mondays and Tuesdays.[40]  Grosskopf has failed to demonstrate that similarly situated individuals were treated more favorably than she was treated.  As a result, she has not demonstrated a prima facie case of disparate treatment.  The government is entitled to summary judgment on the Title VII claims.

The government also moves for summary judgment on Grosskopf's claim under the Rehabilitation Act.  The government maintains that it is entitled to summary judgment because Grosskopf cannot show that her medical restrictions limit her in any major life activity.  The Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a disability in programs receiving federal funding, including employment with Postal Service.[41] Courts use the same standards as those used under the ADA to determine whether the

---

[40]Docket entry # 59, exh. D, p. 4.

[41]The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability. . . be subjected to discrimination. . . by the United States Postal Service."  29 U.S.C. § 794(a).

Rehabilitation Act has been violated.[42]  To prevail in a discrimination claim under the

Rehabilitation Act, the plaintiff must make a prima facie showing that (1) she is an individual

with a disability; (2) is otherwise qualified; (3) worked for a program receiving federal funding;

(4) and was denied the benefits of her employment or subjected to discrimination solely because

of her disability.[43]  Under the EEOC regulations, disability means "(1) [a] physical or mental

impairment that substantially limits one or more of the major life activities of such individual; (2)

[a] record of such an impairment; or (3) [b]eing regarded as having such an impairment."[44]  A

major life activity means "functions such as caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working."[45]

> A physical or mental impairment that affects the claimant's ability to engage in a
> narrow range of jobs only or a particular job alone does not "substantially limit"
> one or more major life activities.  The inability to work at the specific job of one's
> choosing is not a substantial limitation on a major life activity.  "The impairment
> must substantially limit employment generally."  Whether an impairment
> substantially limits a plaintiff's employment potential depends upon the number
> and types of jobs from which he is disqualified, the geographic area to which he
> has reasonable access, and his employment qualifications.[46]

To show that Grosskopf cannot show that she is substantially limited in a major life

activity, the government presented Grosskopf's description of her medical restrictions in the

---

[42]*See* 29 U.S.C. § 794 (stating that the same standards used to determine whether employment discrimination occurred under the ADA apply to a complaint alleging employment discrimination under the Rehabilitation Act).

[43]*See Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997); *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993).

[44]29 C.F.R. § 1630.2(g).

[45]*Id*. at § 1630.2(I).

[46]*Hileman*, 115 F.3d at 353-4 (citations omitted).

affidavit supporting her administrative claim.[47]  In her affidavit, Grosskopf described her

restrictions as follows:  "I have limited use of my left arm.  Pursuant to my physician's order, I

am to avoid reaching over my shoulders at all times.  I am not to carry, push, pull or lift more

than twenty (20) pounds intermittently."[48]  This evidence does not indicate that Grosskopf has a

physical impairment that substantially limits one or more of the major life activities.  To survive

summary judgment, Grosskopf must present documentary evidence to raise a fact question about

whether she is limited in a major life activity.

In her response to the government's motion, Grosskopf did not explain why she was

disabled, but only asserted that the Postal Service treated her as disabled.[49]  She did not address

whether she is substantially limited in a major life activity.  Grosskopf did not identify any

summary-judgment evidence to support her assertion that she is disabled or that the Postal

Service treated her as disabled.  But in her sur-reply, she cited several exhibits in her response to

support her position.[50]  She did not explain how the exhibits raised a fact question.  Despite the

lack of explanation, I reviewed the cited exhibits to determine if anything in the exhibits raises a

fact question about whether Grosskopf is substantially limited in a major life acitivty.[51]  My

description of those exhibits will show why Grosskopf's summary-judgment evidence does not

raise a fact question.

---

[47]*See* docket entry # 59, p. 15.

[48]Docket entry # 59, exh. B, p. 10.

[49]Docket entry # 71, p. 14.

[50]Docket entry # 88, p. 7.

[51]The discussed exhibits are attached to docket entry # 71.

Exhibit P-1 is an unidentified document certifying that "Belinda L. Boldt" has a compensable service connected disability of 10 per cent; the document appears to have been generated for the purposes of obtaining a property tax exemption.  Exhibit P-2 is a PS Form 50, Notification of Personnel Action, U.S. Postal Service, reflecting an effective date of 11-23-1996 and establishing a probationary period to expire on 2-20-97.  The document appears to be the form documenting the start date of Grosskopf's employment with the Postal Service.  An excerpt from Guidelines for Processing Personnel Actions is attached to Exhibit P-2, with a hand-scribed annotation to draw a reader's attention to the purpose of a Form 50.  Exhibit P-3 is a copy of Grosskopf's Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation.  The form is dated as received on June 18, 2002.  In the form, Grosskopf wrote that she "lifted a full. . . Bucket to put in an APC and felt a sharp pain in lt shoulder."  She described the nature of her injury as "left shoulder pain with pain going down left arm."  A form modifying Grosskopf's duty position to mail processor, pay level 5, and describing physical restrictions established by Grosskopf's doctor—"Ø Lifting, Ø pushing, Ø pulling, Ø simple grasping, Ø reaching above shoulder, all for left shoulder"—is attached to Exhibit P-3.  There is another form attached to Exhibit P that is barely legible, but appears to document a doctor's assessment of Grosskopf's ability to work.  Exhibit P-4 consists of what appears to be copies of four pay advices with typed-written comments.  The comments suggest Grosskopf wanted to show that she was paid less after being placed in a mail processor, pay level 5, position.  Exhibit P-5 is Grosskopf's affidavit.  There, Grosskopf attested that: (1) she suffered a job injury on June 17, 2002; (2) her supervisor offered her a modified limited duty position on June 18, 2002; (3) she accepted the position; (4) she was permitted to work using only her right arm while her left

14

arm was in a sling; (5) she underwent surgery for a left rotator cuff tear on September 16, 2002;

(6) her doctor discovered that she had also suffered a nerve impingement that failed to appear in

any of her MRIs; (7) on April 1, 2003, her doctor restricted her from working; (8) she returned to

work on May 19, 2003 with permanent medical restrictions; (9) the condition in her left shoulder

restricted her from pulling or lifting more than 15 to 20 pounds, from lifting her right arm over

her head, from standing and sitting for more than 2 hours; (10) she was offered a modified

limited duty position, pay level 6, on May 22, 2003; (11) the new assignment complied with all

of her medical restrictions; her doctor completed a worker's compensation form on July 8, 2003

and restricted her from lifting, pushing or pulling 15 to 20 pounds; (12) she was advised on July

23, 2003 that her job was going to be re-posted and opened for bids; (13) she was converted to an

unencumbered regular unassigned position on September 18, 2003; (14) the Union consented to

the change in her position; and (15) on October 31, 2003, she was notified that her scheduled-

days-off were being changed.  Exhibit 14 consists of three documents: (1) a Notification of

Personnel Action, dated 11-07-2003, with an effective date of 9-18-2003, reading, "IAW APWU

LOCAL ARTICLE 12, SECTION 2.(2)A, REPOSTED #7125916 MPO REASSIGNED TO

#7308244 UNASSIGNED REGULAR MPC, PAY LOCATION CHANGED FROM 337 TO

314 MEC 11/03/03;" (2) a document with questions and answers about processing Article 12

Excessing, indicating that the document was prepared jointly by the Union and the Postal Service

as a resource for the local administration of the National Agreement; and (3) an excerpt from the

Collective Bargaining Agreement between the American Postal Workers Union, AFL-CIO and

the Postal Service, November 21, 2000, November 20, 2003, specifically chapter 12, Principles

of Seniority, Posting and Reassignments.  Exhibit P-15 is another excerpt from the Collective

15

Bargaining Agreement reflecting article 37.3.A.2.  Exhibit P-17 consists of what appears to be a provision of the United States Code addressing civil service retention rights; a copy of 20 C.F.R. §§ 10.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; and an excerpt from a document with a footer reading ELM 17.16, February 15, 2007, addressing an employee injury compensation plan.  Exhibit P-18 is an affidavit by Ramiro Garcia.  In the affidavit, Garcia identifies himself as an employee of the Postal Service and a former Union Steward for the Postal Clerks.  He attested that Grosskopf asked him to file a grievance on her behalf because "the USPS summarily removed her from her modified limited duty job (MLDJ) and made her an unassigned unencumbered regular employee and that the USPS had changed [her] scheduled days off (SDO) which violated her medical restrictions of not working more than five (5) days in a row."  He then explained that he talked with Michael DeVilbiss [the supervisor who initiated the changes in scheduled-days-off in November 2003] and DeVilbiss told him that the Ron Vidal [the Union Representative] told DeVilbiss that he had nothing to worry about because Grosskopf did not have a valid grievance of EEO complaint and that therefore the Union was not going to file a grievance on Grosskopf's behalf.  Exhibit P-19 is copy of a form stating, "[t]his form is provided for the purpose of obtaining a light duty status report. . . ."  The form was signed by an orthopaedic surgeon on December 14, 2004 and reported the following restrictions: limit pulling/pushing to 15-20 pounds, avoid reaching above shoulder at all times, avoid operating machinery, please provide desk type job permanently, and may not work more than 5 days straight without 2 days off.  Exhibit P-22 is an article by Ron Vidal entitled "USPS Has Gone Insane" from the April/May 2006 *Alamo Area Dispatch* and an excerpt from the Collective Bargaining Agreement reflecting article 34.  Grosskopf also cited to Exhibit P-28, an attachment to Grosskopf's sur-reply.  Although Grosskopf did not identify the

16

document, the document bears the caption, "HKK EL 505, Injury Compensation, December 1995, Limited Duty Program Management.[52]

Nothing in Grosskopf's summary-judgment evidence suggests that Grosskopf has a physical impairment that substantially limits one or more of her major life activities. Nothing raises a fact question about whether Grosskopf is substantially limited in her ability to care for herself, perform manual tasks, walk, see, hear, speak, breath, learn, or work. Nothing raises a fact question about whether the Postal Service regarded Grosskopf as having a disability. At most, the summary-judgment evidence shows that Grosskopf sustained a permanent injury to her left shoulder that restricts her from pulling or pushing 15 to 20 pounds, from reaching above her shoulder, operating machinery, and working more than 5 days straight without 2 days off. While this impairment may limit Grosskopf ability's to engage in a narrow range of jobs—in particular, her former job as a mail expediter, pay level 6—she has not shown that it substantially limits her in a major life activity. The inability to work in her former capacity alone does not constitute a substantial limitation on a major life activity. To survive summary judgment, Grosskopf had to present some evidence that raised a fact question about whether her ability to work in general is substantially impaired. Grosskopf has not made that showing, and therefore, the government is entitled to summary judgment on Grosskopf's claims under the Rehabilitation Act.

## The Union's Motion for Summary Judgment

The Union first moves for summary judgment on Grosskopf's Title VII claim. In explaining why it is entitled to summary judgment on that claim, the Union asserts that Grosskopf failed to exhaust her administrative remedies as to any claim based on race.

---

[52]*See* docket entry # 88, exh. P-28.

Grosskopf's complaint is unclear about whether Grosskopf seeks to hold the Union liable for discrimination based on race.  On the first page of the complaint, Grosskopf "alleges that the Union discriminated against [her] because of her race (Caucasian), gender (female) and physical disability for an on the job injury. . . ."  On the fourth page, she states that the issues before the EEOC included whether she was discriminated against "when the Union failed to represent her as it represented male employees when their SDO [scheduled-days-off] were changed."  To the extent that Grosskopf may seek to claim that the Union discriminated against her on the basis of race, she did not include that claim in the charge of discrimination she filed with the EEOC.  Her charge states, "I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Acts of 1964. . . ."[53]  The particulars of Grosskopf's charge show that race was not the basis of her claim.  In the charge, she wrote, "Beginning on or about November 12, 2003, Ron Vidal, Chief Union Steward, is not representing me in the grievance I filed.  Two males who filed grievances in the same situation were represented."[54]  Because Grosskopf did not complain about discrimination on the basis of race in her EEOC charge, any claim against the Union based on race should be dismissed for failure to exhaust administrative remedies.

Without race, Grosskopf's Title VII claim is that the Union failed to represent her based on gender.  Although the Union advanced arguments about why it is entitled to summary-judgment on claims that it caused or attempted to cause the Postal Service to unlawfully

---

[53]Docket entry # 60, exh. 2.

[54]*Id.*

discriminate against Grosskopf[55] and that it did not violate its duty of fair representation—and Grosskopf responded to those arguments[56]— Grosskopf's complaint cannot be reasonably read to allege such claims.[57]  In the complaint, Grosskopf complains only about the Union's failure to represent in her grievance against the Postal Service in the same way as it represented males.  To the extent Grosskopf seeks to hold the Union liable based on allegations that the Union caused or attempted to cause the Postal Service to unlawfully discriminate against her or based on allegations that the Union breached its duty to fairly represent her, Grosskopf failed to exhaust her administrative remedies as to those claims and such claims should be dismissed.

As for the merits of Grosskopf's Title VII, the Union maintains that Grosskopf cannot present evidence to raise a fact question about whether its reason for not pursuing a grievance of Grosskopf's behalf was a pretext for unlawful discrimination.  Title VII prohibits a labor union from "exclud[ing] or [expelling] from its membership, or otherwise [discriminating] against, any individual because of [her]. . . sex. . . ."[58]  Courts have applied the traditional *McDonnell-Douglas* burden-shifting analysis to lawsuits against unions.[59]  Under that analysis, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendant

---

[55]Docket entry # 60, p. 13.

[56]Docket entry # 69, p. 17.

[57]This type of claim is cognizable under Title VII as the statute prohibits labor unions from "caus[ing] or attempt[ing] to cause an employer to discriminate against an individual. . . ."  42 U.S.C. § 2000e-2(c)(3).

[58]42 U.S.C. § 2000e-2(c)(1).

[59]*See Causey v. Ford Motor Co*., 516 F.2d 416, 420 (5th Cir. 1975); *Johnson v. Artim Transp. Sys*., 826 F.2d 538, 542 (7th Cir. 1987); *Pejic v. Hughes Helicopters*, 840 F.2d 667, 672 (9th Cir. 1988).

to articulate a legitimate nondiscriminatory reason for the alleged discriminatory act.  If the defendant meets this burden, then it shifts back to the plaintiff to present substantial evidence that the defendant's reason was pretext for unlawful discrimination.  If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment.[60]

In this case, the Union maintains that did not pursue a grievance on Grosskopf's behalf because Grosskopf received the required 28-day notice that her scheduled-days-off were being changed.  The Union explained that it pursued a grievance on behalf of four men whose scheduled-days-off were being changed because those men did not receive notice within the required 28 days. The Union presented summary-judgment evidence indicating the following. Article 37.4.A of the Collective Bargaining Agreement requires a 28-day notice for a schedule change once an employee becomes an unencumbered unassigned regular employee.  Specifically, the article provides: " An employee who becomes an unassigned regular will continue to work the same hours and scheduled days the employee worked immediately prior to becoming unassigned unless notified of a change in work schedule before the expiration of the first 28 days after the date on which the employee became unassigned."[61]  Grosskopf was notified on July 30, 2003 that her job would be re-posted for city-wide bid on September 18, 2003.  She was further advised that if she bid and was not awarded a job, she would become an unencumbered regular on October 7, 2003 and would be given a permanent and assignment and reporting schedule

---

[60]*See Causey*, 516 F.2d at 420 n.6.

[61]*See* docket entry # 60, exh. 1.

20

within 28 days of the time she became unencumbered.[62]  Grosskopf did not bid on the job

because she felt she was not qualified to perform the job because of the injury to her left

shoulder.[63]  Based on the letter, Grosskopf became an unencumbered regular on October 7, 2003.

Grosskopf was notified on October 31, 2003 that her scheduled-days-off would be changed on

November 15, 2003.  Because October 31, 2003 fell within the first 28 days after October 7,

2003—the day Grosskopf became an unencumbered unassigned regular—Grosskopf received the

28-day notice required by the Collective Bargaining Agreement.

     Four male employees whose scheduled-days-off were changed pursued grievances

through the Union.  Those employees received notice on November 4, 2003.  Because 28-day

notice period ran on November 3, 2003, the male employees did not receive notice within the 28-

day notice period.  The grievances of the male employees were resolved in favor of the

employees because the employees had not received the required 28-day notice.  The resolution of

the grievances delayed the effective date of the change in scheduled-days-off.[64]  The Union's

summary-judgment evidence establishes a legitimate nondiscriminatory reason for not pursing a

grievance on Grosskopf's behalf—that is, because Grosskopf received the required 28-day

notice.  To survive summary judgment, Grosskopf must present substantial evidence to raise a

fact question about whether the Union's reason for not pursuing her grievance was a pretext for

unlawful discrimination.

     Grosskopf cited to several summary judgment exhibits to raise a fact question about

---

[62]*See* docket entry # 60, exh. 4.

[63]*See* docket entry # 60, Tab 2, pp. 24-5.

[64]*See* docket entry # 60, exh. 3.

whether the Union's reason for not pursuing a grievance on her behalf was a pretext for unlawful discrimination. I have discussed several of those exhibits in my discussion of the government's motion for summary judgment—*i.e.*, P-3, P-5, P-14, P-15, P-18, P-19, and P-22. Those exhibits are discussed on pages 14 to 16 of this memorandum. A description of the other cited exhibits—P-6, P-7, P-8, P-9, P-16, P-20 and P-21—follows.

The first page of Exhibit P-6 is an Attending Physician's Report signed by orthopaedic surgeon Frank Garcia on April 1, 2003. Therein, Dr. Garcia described Grosskopf's injury as "rotator cuff tear w/shoulder impingement."[65] The second page of Exhibit P-6 is Grosskopf's claim for compensation for leave without pay for the time period March 26, 2003 to April 22, 2003.[66] Exhibit P-7 is a Postal Service Return-to-Work Form for Off-the-Job Conditions dated May 19, 2003. The form reflects the following work restrictions for Grosskopf for the time period May 19, 2003 to May 27, 2003:

> Maximum work hours per days: 8 hours
> Lifting / Carrying: 15-20 lbs
> Pushing / Pulling / Twisting: 15-20 lbs
> Standing / Walking / Climbing: Climbing Ø, Standing & Walking Continuous
> Stooping / Bending: Intermittent - 4-6 hrs per Drs
> Sitting / Squatting / Kneeling: 1 hours Kneeling    Sitting - 8 hours
> Reaching or working above shoulder height: Avoid at all times
> Grasping / Fine manipulation:  6 hours, 8 hours
> Operating motor vehicles:  Avoid Altogether
> Working at heights or in mechanized environment:  Avoid
> Other restrictions / Comments: Please Provide a Desk Type Job until Patient is
> Re-Evaluated

The form indicates that Grosskopf was unable to work during the time period September 16,

---

[65]Docket entry # 69, exh. P-6.

[66]Docket entry # 69, exh. P-7.

2002 to May 19, 2003.  Exhibit P-8 is a form reflecting a modified duty assignment for

Grosskopf effective May 19, 2003.[67]  Grosskopf's new duty assignment was a mail processing

clerk, pay level 5.  The form reflects that Grosskopf accepted the position on May 22, 2003.

Exhibit P-9 is a record of examination by Dr. Garcia, signed July 8, 2003.  The form documents

the same shoulder injury and indicates the extent to which Grosskopf could perform light work:

*i.e.*, "Limit Lifting, pushing/pulling to 15-20 lbs.  Avoid above shoulder work & reaching above

shoulder at all times.  Please continue current duty assignment permanently."  Exhibit P-16 is a

copy of the October 31, 2003 letter notifying Grosskopf that her scheduled-days-off were being

changed and a receipt-of-letters form, reflecting that unassigned regulars received a notification

letter about the change in their scheduled-days-off.[68]  Exhibit P-20 consists of two charts

reflecting scheduled-days-off for unassigned regulars/clerks—one for the week of October 25

and the other for the week of November 22.  Several entries on the chart have been circled by

hand.  The circles appear to compare Grosskopf's scheduled-days-off with Peggy Oldren's

scheduled-days-off.  The chart for the week of October 25 shows Grosskopf's scheduled-days-off

as Saturday and Sunday, and Oldren's scheduled-days-off as Sunday and Monday.  The chart for

November 22 shows Grosskopf's scheduled-days-off as Thursday and Friday, Oldren's

scheduled-days-off as Sunday and Monday.  Exhibit P-21 is an Offer of Modified Assignment

(Limited Duty), dated December 15, 2004, offering Grosskopf a modified assignment as a mail

processing clerk, pay level 5, requiring the following physical requirement: label trays (one

hour), sitting while flip-flopping (one to eight hours).  The form reflects that Grosskopf accepted

---

[67]Docket entry # 69, exh. P-8.

[68]Docket entry # 69, exh. 16.

the position on December 15, 2004.

The only two exhibits that could conceivably raise a fact question about the legitimacy of the Union's reason for not pursuing a grievance for Grosskopf are Exhibit P-14 and Exhibit P-14. Exhibit P-14—the Notice of Personnel Action, dated 11-07-2003—serves as the basis of Grosskopf's belief that she became an unencumbered regular on September 18, 2003 rather than October 7, 2003. If Grosskopf became an unencumbered employee on September 18, 2003, the notice on October 31, 2003 that her scheduled-days-off were being changed would fall outside of the 28-day notice period. Grosskopf, however, also presented Alex Aleman's deposition to raise a fact question about the Union's reason for not pursuing a grievance on her behalf. Aleman—President of the Union—testified that Grosskopf's grievance file reflected that Grosskopf became an unassigned regular on October 7, 2003.[69] He testified that he had not seen the SF Form 50 that Grosskopf relies on for her assertion that she became unassigned on September 18, 2003.[70] Notably, Grosskopf does not explain how the SF Form 50 which is dated after the date of the letter notifying her that her job was being re-posted and that she would become an unassigned regular if she was not hired for a new position controls the actual date on which she became an unassigned regular. Even without explanation, the SF Form 50 appears to be nothing more than a mistake. Remarkably, the SF Forms 50 for the four male employees for whom the Union pursued grievances reflect the same effective date—September 18, 2003.[71] Exhibit P-14 does not constitute substantial evidence that raises a fact question about whether the

---

[69]See docket entry # 69, exh. P-23, p. 23.

[70]See id. at pp. 23-5.

[71]See docket entry # 59, exh. D, pp. 6, 10, 13, 14 &18-25

Union's reason for not pursuing a grievance on Grosskopf's behalf was a pretext for gender discrimination.

Exhibit P-16 is the receipt-of-letters form showing that unassigned regulars received a notification letter that their scheduled-days-off were being changed.[72]  Peggy Oldren is not on the list.  That omission does not raise a fact question about whether Grosskopf was discriminated against on the basis of gender because the summary-judgment evidence shows that male employees were treated in the same manner as Grosskopf; that is, the Union pursed a grievance on behalf of any employee who did not receive 28 days notice of a change in their scheduled-days-off.  That Oldren—who Grosskopf maintains also sustained an on-the-job injury—was not on the receipt list does not raise a fact question about whether the Union did not pursue on grievance on Grosskopf's behalf because Grosskopf received the required 28-day notice for a change in scheduled-days-off.  The Union is entitled to summary judgment on Grosskopf's claim that she was discriminated against on the basis of gender.

The Union does not advance an argument about why it is entitled to summary judgment on Grosskopf's claim that the Union discriminated against her on the basis of disability, probably because Grosskopf's complaint is unclear about whether she seeks to hold the Union liable on that basis.  Although the first page of the complaint "alleges that the Union discriminated against [Grosskopf] because of her race (Caucasian), gender (female) and physical disability for an on the job injury. . . ," the fourth page identifies the issue before the EEOC as whether Grosskopf was discriminated against "when the Union failed to represent her as it represented male employees when their SDO [scheduled-days-off] were changed."  Although she checked the box

---

[72]*See* docket entry # 69, exh. P-16.

for "disability" in her charge of discrimination with the EEOC, she stated only that "I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Acts of 1964, as amended and in violation of the Americans with Disabilities Act (ADA) of 1990."[73]  To the extent that Grosskopf may seek to hold the Union liable for discrimination, she has failed to produce evidence that she is disabled.

The ADA prohibits a labor union from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[74]  In an unpublished decision, the United States Court of Appeals for the Fifth Circuit articulated the elements of a prima facie case for discrimination by a union under the ADA.[75]  The plaintiff must establish that: "1) she suffers from a disability; (2) she was subject to an adverse union action; and (3) she was treated less favorably than non-disabled employees."[76]

Here, Grosskopf has failed to present evidence showing that she is disabled.  Specifically, she has failed to present evidence that she is substantially limited in a major life activity or that the Union treated her as if she was disabled.  To the extent Grosskopf seeks the hold the Union liable for not pursuing her grievance because she is disabled, the Union is entitled to summary

---

[73]Docket entry # 60, exh. 2.

[74]42 U.S.C. § 12112(a).  *See* 42 U.S.C. § 12111(2) (including "labor union" in definition of "covered entity").

[75]*See Stalcup v. Commc'n Workers of Am.*, No. 01-11280, 2002 WL 1397115 (5th Cir. June 12, 2002).

[76]*Stalcup*, No. 01-11280, 2002 WL 1397115, at *3.

judgment because Grosskopf failed to establish a prima facie case under the ADA.

## Recommendations

Grosskopf failed to exhaust her administrative remedies as to her claim about discrimination based on a December 2003 change in her scheduled-off-days.  Consequently, I recommend granting the government's motion to dismiss (docket entry # 59) and DISMISSING the claim for that reason.  I also recommend GRANTING the government's motion for summary judgment (docket entry # 59) on Grosskopf's Title VII claims because Grosskopf did not present evidence of a prima facie case of gender or race discrimination and because she does not complain about an adverse employment action, and ENTERING summary judgment on those claims in favor of the government.  If on de novo review, the district court determines that Grosskopf made a prima facie case of discrimination, I will consider the government's argument that Grosskopf failed to raise a fact question about whether the Postal Service's reasons for changing Grosskopf's scheduled-days-off was a pretext for unlawful discrimination.  I further recommend GRANTING the government's motion for summary judgment (docket entry # 59) on Grosskopf's Rehabilitation Act claim because Grosskopf did not present any evidence raising a fact question about whether she is substantially limited in a major life activity and ENTERING summary judgment on that claim in favor of the government.  If on de novo review, the district court determines that Grosskopf made a prima facie case of discrimination based on disability, I will consider the government's argument that Grosskopf failed to raise a fact question about whether the Postal Service's reasons for changing Grosskopf's scheduled-off-days was a pretext for unlawful discrimination.

Grosskopf failed to exhaust her administrative remedies as to any claim she may seek to

pursue against the Union based on race.  To the extent that Grosskopf seeks to hold the Union liable for discrimination based on race, I recommend granting the Union's motion (docket entry # 60) and DISMISSING that the claim.  The district court should not consider a claim that the Union caused or attempted to cause the Postal Service to unlawfully discriminate against Grosskopf or that the Union violated its duty of fair representation because Grosskopf's complaint cannot be reasonably read to allege such claims.  Because Grosskopf failed to present evidence that raises a fact question about whether the Union's reason for not pursuing a grievance of Grosskopf's behalf was a pretext for discrimination based on gender, I recommend GRANTING the Union's motion for summary judgment on the gender-discrimination claim (docket entry # 60) and ENTERING summary judgment on that claim.  To the extent the district court determines that Grosskopf pleaded a claim under the ADA against the Union, I recommend ENTERING summary judgment on that claim because Grosskopf failed to establish a prima facie case of discrimination under the ADA.  She failed to present summary-judgment evidence that raises a fact question about whether she is substantially limited in a major life activity.  If on de novo review, the district court determines that Grosskopf presented evidence that she is substantially limited in a major life activity, I will consider the Union's argument that Grosskopf did not suffer an adverse employment action under the ADA.

If the district court accepts my recommendations, it can enter a final summary judgment.

## Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties who have entered an appearance, by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of

Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified.[77] **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the magistrate judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[78] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[79]

**SIGNED** on August 22, 2007.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[77]28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

[78]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[79]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).